## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MAINE

| | |
|---|---|
| In re:<br><br>MERIDIAN MEDICAL SYSTEMS, LLC,<br><br>     Debtor. | Case No. 15-20640-PGC<br>Chapter 7 |
| NATHANIEL R. HULL, ESQ., CHAPTER 7 TRUSTEE OF ESTATE OF DEBTOR MERIDIAN MEDICAL SYSTEMS, LLC,<br><br>     Plaintiff,<br><br>     v.<br><br>KENNETH CARR and APPLIED THERMOLOGIC, LLC,<br><br>     Defendants/Third-Party Plaintiffs,<br><br>     v.<br><br>JEFFREY CARR and ROBERT ALLISON,<br><br>     Third-Party Defendants. | Adv. Pro. No. 15-02028 |

## OBJECTION BY ROBERT ALLISON AND JEFFERY CARR TO THE TRUSTEE'S MOTION TO APPROVE SETTLEMENT AGREEMENT, ABANDON CERTAIN CLAIMS, AND REMAND ADVERSARY PROCEEDING TO STATE COURT, AND REQUEST FOR DISCOVERY AND AN EVIDENTIARY HEARING

Robert Allison ("Robert") and Jeffrey Carr ("Jeffrey" and, together with Robert, the "Managers"), by and through undersigned counsel, hereby respond and object (the "Objection") to the *Motion to Approve Settlement Agreement, Abandon Certain Claims, Release Certain Claims, And Remand Adversary Proceeding To State Court* [D.E. 298] (the "Settlement Motion") filed by Nathaniel R. Hull, in his capacity as the chapter 7 trustee (the "Trustee") of Meridian Medical Systems, Inc. (the "Debtor" or "MMS"). Further, the Managers request that

they be given time to take appropriate discovery regarding the Settlement Motion and that the Court set this matter for an evidentiary hearing at a later date. In support of this Objection, the Managers state as follows:

## I.    **BACKGROUND**

1.    This Court is well aware of the long and tortured history of the Debtor's bankruptcy and the related adversary proceeding (Adv. Pro. No. 15-02028) (the "Adversary Proceeding") at issue in the Settlement Motion, which traces back to before the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code on September 11, 2015 (the "Petition Date").[1] The Trustee now attempts to wash his hands of the matter by entering into a settlement agreement (the "Settlement Agreement") with Kenneth Carr ("Kenneth") that purports to disentangle the estate from litigation between Kenneth, Robert, Jeffery, and MMS, while simultaneously leaving (if not even encouraging) Kenneth to take his apparent vendetta to state court, where additional years of time-consuming and expensive litigation assuredly will follow. As set forth in further detail below, the Settlement Motion falls far short of satisfying the standard for granting a motion to compromise under Bankruptcy Rule 9019. Instead, the Settlement Motion provides wholly insufficient facts that might otherwise allow this Court and the Managers to fully evaluate the Settlement Agreement, or for this Court to grant any deference to the Trustee's positions in the Settlement Motion. Therefore, discovery is required, and the Trustee should be held to his burden of proof at an evidentiary hearing.[2]

---

[1] On August 17, 2016, the Debtor's chapter 11 case was converted to a chapter 7 case.

[2] In light of the need for discovery and the general narrative nature of the Settlement Motion, which does not lend itself to sequential admittals or denials, the Managers request that the Court waive the strict pleading requirement under Local Bankruptcy Rule 9013-1(f). Where practical, the Managers have confirmed certain background facts asserted in the Settlement Motion and have objected or denied other central assertions set forth in the Settlement Motion.

A.      **MMS and The State Court Litigation**

2.      MMS was a closely-held company that focused on developing microwave temperature sensing technology for medical devices.   MMS's predominant assets were intellectual property, including a large portfolio of patents that it licensed to strategic partners. MMS was formed by Kenneth.  In 2010, Kenneth brought his son, Jeffrey, into the company and gave him an ownership interest.  In 2011, Robert also became an owner of the company.   In 2012, Jeffrey and Robert removed Kenneth from his management positions with MMS due to Kenneth's threatened and actual interference with contracts and prospective business relationships between MMS and certain third parties.   This removal was undertaken properly pursuant to applicable statutory and company operating procedures.  Following removal from his manager's role, Kenneth formed a new company, Applied Thermologic, LLC. ("ATL"). Kenneth alleges generally that Robert and Jeffrey breached contracts and duties in their management of MMS and that Robert performed incompetently, but he offers no specifics. Robert and Jeffrey deny any such allegations.

3.      On May 2, 2014, prior to any bankruptcy proceedings, MMS commenced a civil action (the "State Court Action") in Maine state court (the "State Court Complaint") against Kenneth and Kenneth's new company, ATL.

4.      The State Court Complaint, as amended on July 31, 2015, asserted claims against Kenneth for, *inter alia*, breach of contract, misappropriation of trade secrets, conversion, and breach of fiduciary duty related to Kenneth's competition with MMS and his clear attempts to misappropriate for his new business certain patents and proprietary technologies rightfully belonging to MMS.  The State Court Complaint also asserted that Kenneth improperly sought to exercise control over a patent application that belonged to MMS, referred to as United States Patent  Application  Serial  No.  13/709,434  (the  "Cool Cable Patent")  application.  Evidence

obtained through MMS's patent counsel, Cesari McKenna, demonstrates these improper actions by Kenneth.

5.       In October 2014, MMS executed a term sheet with Applied Cardiac Therapeutics ("ACT") for the sale of the MMS assets for a proposed purchase price of $3 million.  The assets to be sold included the Cool Cable Patent application.  MMS's patent counsel, Cesari McKenna, confirmed by written opinion that MMS held a legal right and interest in the Cool Cable Patent application.  Contrary to the assertions in the Settlement Motion, the condition of a sale to ACT was the resolution of the entire state court litigation.  Kenneth's unjustified position relating to the Cool Cable Patent application undermined the contemplated sale to ACT and caused significant financial harm to MMS and its owners.  MMS amended its complaint in state court to assert claims against Kenneth based on his actions related to the proposed ACT transaction.

6.       On May 29, 2014, Kenneth filed a third-party complaint in the State Court Action (the "Third-Party Complaint") against the Managers, alleging, *inter alia*, breach of fiduciary duty, breach of contract, and intentional infliction of emotional distress in connection with the Managers' actions as managing members of MMS.  Kenneth also filed counterclaims against MMS (the "State Court Counterclaims") asserting counts for, *inter alia*, breach of contract, inspection of books and records, and declaratory judgment that his removal from MMS's management be declared null and void.[3]  Kenneth asserted no specific facts to support the claims of intentional tortious behavior or breach of fiduciary duties, and does not do so in the Settlement Motion or Settlement Agreement.    The Managers, in turn, filed individual third-party counterclaims against Kenneth (the "Third-Party Counterclaims"), including, *inter alia*, claims for breach of contract, breach of fiduciary duty, and intentional misrepresentation/fraudulent concealment based on Kenneth's actions (as summarized in paragraph 5 above).

---

[3]  Kenneth later amended his counterclaim on or around September 9, 2015.

**B.      The Indemnification Obligations**

7.      Shortly after the Petition Date, MMS filed a Notice of Removal [D.E. 38], which brought the State Court Action into this Court in the form of the Adversary Proceeding.  Jeffrey and Robert filed timely claims (Claims 3-1 and 4-1, respectively) in the bankruptcy proceeding for indemnification covering all liabilities and litigation expenses that might be incurred due to Kenneth's third-party claims against the Managers.  These claims for contractual indemnification are made pursuant to the MMS Operating Agreement, dated December 31, 2011 (the "Operating Agreement").

8.      Section 5.09 of the Operating Agreements states, in pertinent part, that:

the LLC shall indemnify any Member, Manager or officer made a party to a proceeding because such Member, manager or officer acted or failed to act on behalf of the LLC *against liability for a judgment, settlement, penalty, fine, . . . or reasonable expenses* incurred with respect to a proceeding, if the Member, Manager or officer conducted himself in good faith and reasonably believed his conduct was not opposed to the best interest of the LLC.  (emphasis added.)

9.      The Managers assert that they exercised reasonable business judgment at all relevant times in regard to actions undertaken with respect to Kenneth and MMS, including the removal of Kenneth as a manager of MMS.  The coverage of the MMS Operating Agreement indemnification provision speaks for itself in clearly providing such indemnification to the Managers under these circumstances.

10.      The numerous parts of the now-removed State Court Action—including the State Court Complaint, Third-Party Complaint, State Court Counterclaims, and Third-Party Counterclaims—all revolve around the same set of facts relating to Kenneth's removal from MMS, his creation of ATL, his attempts to interfere with MMS business relationships and misappropriate MMS assets, including the sale of the Cool Cable Technology.  Contrary to the assertion in the Settlement Motion, Kenneth's claims against Robert and Jeffrey are not claims

against the estate, but instead give rise to claims by Robert and Jeffrey and which make them creditors of the estate.

**C.    The Coral Beach, LLC Sale**

11.    Prior to conversion to chapter 7 on August 17, 2016, MMS sold its assets, including the Cool Cable Technology, to Coral Beach, LLC for $250,000.00.  Kenneth objected to the sale on the basis that he owned the Cool Cable Technology [D.E. 113], but he has presented no evidence or legal support for his position.  In addition, Kenneth has never filed any proof of claim in the MMS bankruptcy proceeding.

12.    In its *Order Authorizing Debtor to Sell Assets* [D.E. 140], this Court allowed the sale and ordered that the net sale proceeds "be held in escrow by Debtor's counsel for further distribution pursuant to the provisions of the bankruptcy code and further order of the Court, with the liens, claims, interests and encumbrances of . . . Kenneth Carr to attach to such surplus proceeds, to the extent of their validity, enforceability, and priority."  Order at ¶ 24.  The Settlement Motion sets forth no evidence or legal support for Kenneth's asserted claim.  Furthermore, there is no evidence that the Cool Cable Patent application was allocated any value in the asset sale to Coral Beach, LLC.  The lack of any value attributable to the Cool Cable Patent application is supported by the general abandonment of the application by the purchaser of the MMS assets.

13.    The $250,000 sale proceeds and "unencumbered funds" of $82,000 form a critical portion of the estate's assets which would be used to satisfy creditors' claims, including the timely claims filed by Robert and Jeffrey.  The claims the estate holds against Kenneth are not properly articulated for purposes of evaluating the four factors which govern the approval of a compromise of contested matters such as the disputes involved here. *In re: ServiSense.com, Inc.,* 382 F.3d 68 (1st Cir. 2004).  The Settlement Motion also fails to articulate the nature of the

claims alleged by the Trustee to be held by the estate against Robert and Jeffrey arising from the ACT matter.  See Settlement Motion ¶ 11.  This lack of specificity undermines the ability of creditors to respond to the Settlement Motion and the ability of the Court to apply the compromise approval factors.

**D.    Kenneth's Consistent But Ineffective Efforts To Delay Resolution Of The State Court Action In Bankruptcy Court**

14.    Kenneth first attempted to move the litigation out of the Bankruptcy Court shortly after the case was filed.  On October 9, 2015, he filed a Motion to Abstain and/or Remand [Adv. Proc. D.E. 8].  The Bankruptcy Court denied that motion from the bench [Adv. Proc. D.E. 21] before entering a written order [Adv. Proc. D.E. 26].  Kenneth appealed to the District Court, which dismissed the appeal after denying Kenneth's motion for leave to appeal.  See Order, Case No. 2:16-cv-38-DBH, D. Ct. D.E. 17.

15.    On July 4, 2017, Kenneth filed a second motion seeking remand of the litigation to state court [D.E. 151], which the Bankruptcy Court denied on August 11, 2017 [D.E. 160]. Kenneth filed a motion for leave to appeal, and, once again, the District Court denied that motion.  See U.S. Dist. Ct., D. Me., Misc. No. 1:17-mc-208-DBH, D.E. 8.

16.    Since day one, Kenneth has engaged in a campaign to delay any progress towards resolving the State Court Actions and more recently the Adversary Proceeding.  By the Trustee's own calculations, Kenneth has filed approximately 25 motions, 8 objections, and 3 appeals in the bankruptcy case and the Adversary Proceeding.  See Settlement Motion ¶ 14.  Those tactics include two motions to abstain or remand the State Court Action to state court, both of which were denied by the Bankruptcy Court and affirmed on appeal.  Virtually every motion by Kenneth has been a procedural motion to hinder or delay the litigation—not to achieve any substantive resolution.  Furthermore, Kenneth has lost most every motion or objection filed.

17.    Although the Trustee undoubtedly has spent extensive time negotiating the Settlement Agreement, the Trustee has failed to fully and properly evaluate the merits and value of the various claims involved in the Adversary Proceeding or otherwise alluded to in the Settlement Agreement.

## II.    SUMMARY OF THE OBJECTIONS TO THE SETTLEMENT AGREEMENT

18.    The Managers object to the central terms of the proposed Settlement Agreement, as set forth in the summary of terms articulated by the Trustee in paragraph 16 of the Settlement Motion (replicated and highlighted below):[4]

a.    **The Trustee will release Kenneth and ATL from all claims arising under the Bankruptcy Code. The Trustee will abandon all claims he or MMS has against Kenneth and ATL. The Trustee will abandon to MMS all claims that were or could have been asserted against Kenneth, ATL, Jeffrey, or Robert related to the facts of the Adversary Proceeding.**

**Managers' Objection**:  There is no specificity as to which claims are being released and which are being abandoned.  Further, there is no explanation of the justification for a release as opposed to abandonment, nor of the relative merits of any of the claims alluded to.

b.    **Kenneth will dismiss all claims he has against MMS, the Trustee, and the MMS bankruptcy estate, including any claim to any portion of the proceeds from the sale of assets to Coral Beach, LLC.**

**Managers' Objection**:  The dismissal apparently is without prejudice and thus leaves the door open to Kenneth's reassertion of such claims against MMS or the Managers in another proceeding or venue.  Thus, the proposed dismissal provides no consideration for the Trustee's release or abandonment of the claims against Kenneth.

---

[4] The Managers' summary of objections in this section is not meant to limit the objections asserted elsewhere in the Objection, including in Part IV below.

c.      **The Trustee will stipulate that the "Cool Cable Patent Applications," as that term is defined in the Agreement, are not part of the MMS bankruptcy estate. Moreover, the Trustee will not oppose efforts by Kenneth to revive the Cool Cable Patent Applications at the USPTO on grounds of unintentional abandonment or other statutory or equitable ground that could support the revival of the application.**

    **Managers' Objection**:  This stipulation is of no consequence because the estate's rights and interests in the Cool Cable Patent applications were sold to Coral Beach, LLC in the Section 363 sale approved by the Court.

d.      **Kenneth will refrain from prosecuting any claims against Jeffrey or Robert based on conduct before the entry of the Approval Order that would be indemnifiable by MMS under its Operating Agreement.**

    **Managers' Objection**:  An agreement to "refrain from prosecuting indemnifiable claims" against the Managers is not a release of claims with prejudice and does not avoid the high likelihood that Kenneth would pursue claims that are covered by the indemnification provision in the Operating Agreement.  As currently provided in Sections 6 and 8 of the Settlement Agreement, Robert and Jeffrey would have no recourse against Kenneth or the estate for claims found to be indemnifiable or found to be without merit in any later proceeding, whether in this Court or a state court.  These particular provisions of the proposed Settlement Agreement undermine the Manager's indemnification claims and rights under the Operating Agreement and prevent the approval of the Settlement Agreement pursuant to applicable legal standards.

e.      **Kenneth will be free to pursue non-indemnifiable claims against Jeffrey and Robert.**

    **Managers' Objection**: The Settlement Motion and the Settlement Agreement provide no explanation as to how indemnifiable and non-indemnifiable claims are distinguished, nor is there

any articulation as to the factual and legal basis for any so-called "non-indemnifiable" claims against the Managers.  In fact, if approved, the Settlement Agreement would deprive Robert and Jeffrey of any right to seek indemnification for claims later determined to be without merit or indemnifiable under the Operating Agreement.

f.      **The Trustee will request remand of the Adversary Proceeding. The Agreement is contingent on entry of an order providing for, *inter alia*, remand.**

**Managers' Objection**: Kenneth again refuses to acknowledge prior rulings of this Court and the District Court with respect to remand.  If there are any open issues regarding possible indemnification claims to be asserted by Robert and Jeffrey, then this Court must leave this chapter 7 proceeding open and direct the Trustee to preserve assets that might be used to satisfy such indemnification claims.  Further, if those indemnifiable claims might exist, as is currently the case with the contingent claims filed by Robert and Jeffrey, then this Court should retain jurisdiction over any remaining claims related to the Adversary Proceeding.  See D.E. 160; U.S. Dist. Ct., D. Me., Misc. No. 1:17-mc-208-DBH, D.E. 8

g.      **The Approval Order must provide that persons in possession of books and records of MMS, other than the Trustee, shall preserve such materials. The Trustee will turn over all electronic records in his possession, custody or control to Evidox with instructions to preserve such materials, provided however that the Trustee shall have no obligation to expend funds for any further services of Evidox.**

**Managers' Objection**: The Managers object to any turnover of documents or information that would compromise the Debtor's or the Managers' respective attorney-client privilege and/or work product privilege.

h.      **Kenneth will not seek any discovery from the Trustee except under narrow circumstances described in the Agreement.**

**Managers' Objection**: The Managers object to any turnover of documents or information that would compromise the Debtor's or the Managers' respective attorney-client privilege and/or work product privilege.

i.        **Kenneth shall have no standing to participate further in the MMS bankruptcy case, except under narrow circumstances described in the Agreement.**

**Managers' Objection**: There is no value provided by this term of the Settlement Agreement given Kenneth's failure to file a proof of claim.

j.        **The various, abandonments, releases, remand, and other obligations of the parties shall become effective immediately upon entry of the Approval Order, and in the case of Kenneth, shall be irrevocable even if the Approval Order is reversed on appeal, so long as following such a reversal the Trustee refrains from opposing a remand to state court.**

**Managers' Objection**:  It is unclear from this summary or the corresponding provision of the Settlement Agreement which parties are benefitted and/or harmed by this "irrevocable order."  This provision is contrary to applicable procedural rules and to the Managers' rights to appeal any order granting the Settlement Motion and approving this factually and legally unsupportable Settlement Motion and Settlement Agreement.

k.        **The Agreement shall have no third party beneficiaries other than Jeffrey and Robert, who are third party beneficiaries regarding paragraphs 6 and 8 of the Agreement provided the Approval Order is not reversed on appeal.**

**Managers' Objection**:  As noted above, Robert and Jeffrey in no way benefit from the Settlement Agreement given the illusory "protections" and the elimination of their rights to indemnification.

### III.    LEGAL STANDARD

19.    Rule 9019(a) of the Federal Rules of Bankruptcy Procedure provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."    Local Bankruptcy Rule 9014-1(a) also provides for an evidentiary hearing in contested matters such as this.  See Part IV.G., below, and accompanying request for discovery and evidentiary hearing.

20.    In the First Circuit, bankruptcy courts look to a four-pronged test (the Jeffery factors) for determining whether to approve a settlement under Rule 9019(a):

> (1) the probability of success in the litigation being compromised; (2) the difficulties, if any, to be encountered in the matter of collection; (3) the complexity of the litigation involved and the expense, inconvenience, and delay attending it; and (4) **the paramount interest of the creditors and a proper deference to their reasonable views in the premise**. (Emphasis added.)

Beacon Investments LLC v. MainePCS, LLC, 468 B.R. 1, 16 (D. Me. 2012) (quoting Jeffrey v. Desmond, 70 F.3d 183, 185 (1st Cir. 1995)); see also In re Genesys Research Inst., Inc., No. 15-12794-JNF, 2016 WL 3583229, at *12 (Bankr. D. Mass. June 24, 2016) (same).

21.    "The court's consideration of these factors should demonstrate whether the compromise is fair and equitable, and whether the claim the debtor is giving up is outweighed by the advantage to the debtor's estate."  In re ServiSense.com, Inc., 382 F.3d 68, 72 (1st Cir. 2004) (citation omitted).

### IV.    ARGUMENT

22.    The Settlement Motion lacks the factual depth and analysis required for this Court to find that the Settlement Agreement satisfies the standard for approving a compromise under these factual and legal circumstances.  In particular, the Settlement Motion omits any specific evidence regarding the value of the particular claims released on either side in the Settlement Agreement—both as to the claims held by the Trustee against Kenneth and the claims held by

Kenneth against the Trustee.   The lack of information in the Settlement Motion and the Settlement Agreement leaves the Managers (and the Court) with more questions than answers, and thus is unreasonable and nowhere close to "fair and equitable."  Id.  The Settlement Motion instead glosses over the four-factor Jeffery test by relying on generalities that, in essence, amount to little more than the obvious acknowledgement that Kenneth is a combative litigant.   But the Trustee's potential aversion to litigating against Kenneth—itself an unfortunate concession of defeat to Kenneth's scorched-earth litigation strategy that thus far has prevented the Trustee (and the Court and the Managers) from getting to the merits of the actual issues between the parties— is insufficient to warrant approval of the Settlement Agreement.   Rather, the Trustee must show the Court why the Settlement Agreement is "fair and equitable."   In re ServiSense.com, 382 F.3d at 72.   Thus far, and absent substantially more information, the Settlement Motion fails to do so.

A.   **The Settlement Motion Fails To Provide Sufficient Evidence Regarding The Value Of Releasing The Claims Held By Kenneth And ATL Against The Debtor**

23.   The Settlement Agreement provides that Kenneth and ATL will release the State Court Counterclaims against MMS.   See Settlement Agreement ¶ 3.   But there is no evidence that these counterclaims have any merit or value to the estate, or what investigation the Trustee undertook to reach that conclusion.   Moreover, Kenneth's failure to file any proof of claim undermines his right to assert such claims in this bankruptcy case or in the Adversary Proceeding.

24.   The State Court Counterclaims seek inspection of books and records and for declaratory judgment that Kenneth's removal from MMS was void, but such injunctive relief is now mooted given MMS's liquidation.   The remaining monetary claims—for money lent and breach of contract based on non-payment of consulting fees, see Settlement Motion ¶ 6— likewise are insufficiently explored in the Settlement Motion.   Such unanswered questions include:  How much money did Kenneth lend?  On what terms?  When was the money lent, why,

and what evidence reflects the loan?  Is there a written agreement memorializing the loan that might give rise to a claim?  What is the basis for Kenneth's claim that he is owed consulting fees?  Has the Trustee seen a consulting agreement?  Jeffery and Robert assert that no such consulting agreement exists and that insufficient evidence has been presented or even exists to support the alleged loans from Kenneth.

25.    The Trustee nonetheless asserts that Kenneth's setoff claims for unpaid consulting fees and outstanding loans total approximately $800,000, see Settlement Motion ¶ 22, but such claims appear to have no evidentiary support that might make them plausible enough to create any settlement value to the estate.

26.    On the contrary, the Trustee states that the estate's claims against Kenneth and ATL are strong.  See Settlement Motion ¶ 22.  How can "strong claims" against Kenneth be balanced against vague and unsupported affirmative defenses?  Under the Jeffery factors, they cannot.

27.    Without these and other answers, dismissal of the State Court Counterclaims appears to offer no value to the estate, and at the very least, the Settlement Motion suggests that the Trustee has failed to investigate fully the value of such claims before abandoning them in the Settlement Agreement.

28.    The Settlement Agreement also includes Kenneth's agreement to dismiss his claims against MMS and the Trustee for a portion of the proceeds from the sale of assets to Coral Beach, LLC for $250,000.  See Settlement Agreement ¶ 4.  But the Settlement Motion makes no reference to why Kenneth, in fact, might have a meritorious claim to any portion of such proceeds.  Instead, given that Kenneth more than likely has no such claim, the estate again appears to receive no value from that aspect of the Settlement Agreement.  Without evidence of value being attributed to the Cool Cable Patent application, and without evidence and legal

support for Kenneth's asserted ownership right, this aspect of the Settlement Agreement is unsupportable and unreasonable.

**B.    The Settlement Motion Fails To Clearly Define Or Provide Sufficient Evidence Regarding The Value Of Releasing The Claims Held By The Trustee Against Kenneth And ATL**

29.    On the other hand, the Trustee appears to have admittedly valuable claims against Kenneth, which he is abandoning and declining to pursue as part of the Settlement Agreement (¶ 2).    Such claims, if successful, could add significant value to the estate for the benefit of creditors.

30.    It also is not clear from the Settlement Motion or the Settlement Agreement which claims against Kenneth or ATL the Trustee might have but is abandoning to MMS, although the Trustee states that its claims based on Kenneth's interference in the sale to ACT for $3,000,000 are "strong."    The Managers would be direct beneficiaries of any net proceeds available from a recovery on those claims.

31.    And even compared to the purported $800,000 setoff claim held by Kenneth (which lacks any evidentiary support), the potential recovery on the abandoned claims appears to greatly exceed the setoff value.    Why, then, is the Trustee foregoing tens, if not hundreds, of thousands of dollars in potential recovery for the estate to reach a settlement with Kenneth?

32.    Similar questions apply to the claims under the Bankruptcy Code from which the Trustee is releasing Kenneth and ATL.    What are those claims?    What is their potential value to the estate?    What is the Trustee's probability of success?    If valid claims exist, why has the Trustee not yet brought them years later?    It is impossible to balance the pros and cons of the Settlement Agreement without such information.

**C.      The Settlement Motion Fails To Consider Whether Abandonment Of The Cool Cable Patent Applications Provides Any Value To The Estate**

33.      The Settlement Agreements purports to stipulate that the Cool Cable Patent application is not part of the MMS bankruptcy estate, see Settlement Agreement ¶4, and further provides that the "Trustee and his agents shall not oppose any effort by [Kenneth] to revive the Cool Cable Patent Applications at the USPTO on grounds of unintentional abandonment or other statutory or equitable ground that could support the revival of the application," see id. ¶ 10. However, the Settlement Motion fails to explain what value the Trustee places on this stipulation in favor of Kenneth, if any, as part of the Settlement Agreement, or why the Trustee should assign any value to that interest.

**D.      The Settlement Motion Fails To Account For The Managers' Right To Indemnification For Defending Against Kenneth's Inevitable Attempt To Bring Indemnifiable Claims Against Them In State Court**

34.      The Trustee's decision to settle claims against the estate by freeing Kenneth to sue Robert and Jeffery in state court after a purported remand is improper, short-sighted, and contrary to the plain language of the indemnification clause in the Operating Agreement, which provides, *inter alia*, that the Managers shall be indemnified by MMS "against liability for a judgment, settlement, penalty, fine, . . . or *reasonable expenses incurred* with respect to a proceeding" if they acted in "good faith and reasonably believed [their] conduct was not opposed to the best interest of [MMS]."  Operating Agreement, § 5.09 (emphasis added).

35.      The Trustee, of course, must try to avoid the indemnification clause because the clause gives the Managers a claim against the estate, and thus a basis for the Adversary Proceeding to remain in Bankruptcy Court, as this Court noted in denying Kenneth's second motion to remand.  But the Trustee's solution fails to nullify completely the indemnification clause and instead attempts to significantly harm the rights of Jeffery and Robert as creditors of MMS.

36.    In particular, the Settlement Agreement provides that (¶ 6) "[Kenneth] and ATL will refrain from prosecuting any claims against [Jeffery] or [Robert] based on conduct before entry of the Approval Order that would be indemnifiable by MMS," that (¶ 7) Kenneth and ATL "shall retain claims against [Jeffery] and [Robert] that are not indemnifiable by MMS," and that (¶ 8) if Kenneth or ATL "were to add or pursue any claims against [Jeffery] or [Robert] later determined to be indemnifiable by MMS in a final and non-appealable order, he or it shall dismiss such indemnifiable claim."   The Settlement Agreement (¶ 1) also attempts to limit Jeffery and Robert's remedies if Kenneth or ATL do, in fact, attempt to bring indemnifiable claims against the Managers:  "This Agreement does not create any third-party beneficiaries except for the right of [Jeffery and Robert] to enforce Paragraphs 6 and 8 *by specific performance only*, without any rights given or intended to be given to Jeff and Bob to seek damages from any actual or alleged breach of this agreement."  (emphasis added.)

37.    But the very act of Kenneth or ATL mistakenly bringing an indemnifiable cause of action in state court triggers an indemnification claim by the Managers against the Debtor's estate, as the Managers are entitled to recover the *expenses* occurred in defending against such a proceeding, even when the claim later is deemed indemnifiable by the state court and thus forbidden by the Settlement Agreement.[5]  Whether the Managers may enforce the Settlement Agreement by seeking specific performance cannot eliminate their right to monetary indemnification from the estate.  The only predictable result is that the Managers will be back in this Court to recover on their indemnification claim against the estate (or what little is left of it if the Settlement Agreement is approved).

---

[5] The Settlement Agreement also assumes that Kenneth can easily separate identifiable claims from non-identifiable claims.  Given that all claims arise from the same set of facts, doing so will be difficult and costly.  And given Kenneth's litigation record, the Managers hardly can expect that Kenneth will proceed cautiously to avoid crossing that line.

38.     The Settlement Agreement further states that Kenneth intends to pursue against the Managers in state court claims for intentional infliction of emotional distress, negligent infliction of emotional distress, breach of duty of loyalty, violations of the Maine LLC Act, and undefined tort and contract claims that arise from "bad faith."  See Settlement Agreement ¶ 7. The obvious reason for vaguely labeling claims as "bad faith" and "breach of loyalty" are to get around the indemnification clause.  The Managers posit, however, that such potentially non-indemnifiable claims have no factual support (and, in fact, raise questions of whether continuing to litigate such claims would violate Rule 11 or the Maine state law equivalent).

39.     But more pertinent to the Settlement Motion, under applicable Maine law, each of these purported claims sets a high pleading and evidentiary bar.  See, e.g., Parker v. Dall-Leighton, No. 2:17-CV-216-GZS, 2017 WL 6210892, at *9 (D. Me. Dec. 8, 2017) (negligent infliction of emotional distress requires "that the defendant owed the plaintiff a duty; that the defendant breached its duty; that the plaintiff suffered severe emotional distress; and that the defendant's conduct caused the harm"); Cota v. U.S. Bank Nat'l Ass'n, No. 2:15-CV-486-GZS, 2016 WL 922784, at *9 (D. Me. Mar. 10, 2016) (intentional infliction of emotional distress requires that "(1) The defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct; (2) The conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, and utterly intolerable in a civilized community; (3) The conduct of the defendant caused the plaintiff's emotional distress; and (4) The emotional distress suffered by the plaintiff was so severe that no reasonable man could be expected to endure it.").  Kenneth and the Trustee have offered no evidence supporting such claims, and thus are unable to demonstrate the reasonableness of their attempt to separate "indemnifiable" and "non-indemnifiable" claims against the Managers.  The concept of separating indemnifiable claims from non-indemnifiable

claims in a state court proceeding in some vague and non-specific manner is not practical and ignores the cost to the Managers of getting to a final judgment on such issues. Moreover, the factual underpinning of each type of claims are substantially, if not completely, identical— namely, Kenneth's removal from MMS. These costs to the Managers from litigating in state court will trace directly back to the estate. That is exactly why these matters have remained in Bankruptcy Court so far.

40. The Settlement Motion also repeatedly refers to the difficulty of litigating against Kenneth and attempts to paint the disputes between Kenneth, Robert, and Jeffery as an "intra-family battle." See, e.g., Settlement Motion ¶ 14 ("Kenneth has been an aggressive litigant in both the Adversary Proceeding and the main bankruptcy case. Kenneth has filed approximately 20 motions . . ."); ¶ 22 ("Kenneth vigorously denies a breach of duty"); ¶ 24 ("The Trustee's claims against Kenneth and ATL involve hotly disputed facts. The underlying facts are highly emotional. Kenneth has been an aggressive litigator and appears to have ample funding to engage counsel to fight battles that, for him, appear to transcend economic considerations. At its core, this is an intra-family battle that involves embittered relations between Kenneth and his son, Jeffery, as well as other family members."); ¶ 25 ("Given the intensity with which Kenneth has pursued the litigation . . ."). It is important to point out the fault in this logic. First, Robert is not a family member. Second, this is a litigation matter among business associates involving very common commercial litigation themes. This Court is more than capable of resolving such business issues. Whatever Kenneth's personal motivations may be, the underlying facts that give rise to the estate's right to recover from Kenneth involve business actions taken relating to MMS, specifically Kenneth's removal as a manager of MMS.[6] Ultimately, the interests of creditors are

---

[6] The Trustee also expresses concern about closing the estate, but apparently is retaining unspecified claims against Abbott Laboratories, ACT, New Enterprise Associates, Volcano, and NGBI, which will keep the bankruptcy estate open in any event.

"paramount," and deference should be given to their views on the reasonableness of the treatment of their claims and the assets of the estate under a proposed compromise.   In re ServiSense.com, 382 F. 3d at 72.

**E.     The Settlement Motion Fails To Show That The Trustee Cannot Collect A Judgment From Kenneth, If Successful In Litigation**

41.     The Settlement Motion fails to show that the Trustee could not collect on a judgment against Kenneth or ATL.   See Beacon Investments, 468 B.R. at 16 (important factor when considering 9019(a) motion is "the difficulties, if any, to be encountered in the matter of collection").   Indeed, given Kenneth's apparently endless resources to fund personal litigation against MMS, Robert, and Jeffery, see Settlement Motion ¶ 24 ("Kenneth . . . appears to have ample funding to engage counsel to fight battles . . . ."), collecting on a judgment does not appear to be a factor weighing in favor of approving the Settlement Agreement.

**F.     Remand Of The Adversary Proceeding Is Improper**

42.     If the Court denies the Settlement Motion, the Adversary Proceeding will remain at the Bankruptcy Court, and this Court will maintain jurisdiction of the case for the same reasons that the Court denied Kenneth's second motion to remand.   The Trustee and Kenneth would finally be required to see this matter to its conclusion.   Remand therefore would be improper in such a situation.

43.     Even if the Court grants the Settlement Motion, however, the Court should not remand the Adversary Proceeding.   That is because Robert and Jeffery will maintain their indemnification claims against the Debtor's estate for their expenses in litigating against Kenneth in state court regarding whether his claims are indemnifiable.   The Settlement Agreement provides that Kenneth must dismiss claims *if* they are deemed indemnifiable under the Operating Agreement; it ignores the significant cost to Jeffery and Robert in getting to such a decision from the state court, as well as in litigating the appeals that Kenneth surely would bring after his

inevitable loss.  And given that there remains not a shred of evidence that Robert or Jeffery acted in bad faith in removing Kenneth from MMS, a ruling that all claims asserted by Kenneth against them are indemnifiable under the Operating Agreement is the only plausible conclusion—the costs of which must be borne by the estate and give rise to jurisdiction in the Bankruptcy Court. See D.E. 161 at 14 ("The indemnification claims, the effect of this litigation on the administration of the bankruptcy estate, and the Trustee's pursuit of claims convince me that the entire case belongs together and it belongs in this Court, until such time, if any, that it must go to the District Court."); see also In re Montreal Maine & Atl. Ry., Ltd., No. 1:13-MC-00184-NT, 2014 WL 1155419, at *6 (D. Me. Mar. 21, 2014) (defendant's right to indemnification from debtor gives rise to jurisdiction); Pacor, Inc. v. Higgins, 743 F.2d 984, 995 (3rd Cir. 1984), overruled in part on other grounds by Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 124-25 (1995) ("[A] civil proceeding is related to bankruptcy [if] the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.").

**G.     The Court Should Permit Discovery And Set The Settlement Motion For An Evidentiary Hearing**

44.     As the foregoing discussion shows, the Settlement Motion lacks the necessary facts and evidentiary basis for the Managers or the Court to determine "whether the compromise is fair and equitable, and whether the claim the debtor is giving up is outweighed by the advantage to the debtor's estate." In re ServiSense.com, 382 F.3d at 72.

45.     Jeffery and Robert should be allowed to pursue such missing information through discovery from the Trustee and Kenneth pursuant to Rule 9014 of the Federal Rules of Bankruptcy and Local Bankruptcy Rule 9014-1, and the Court should set this matter for an

evidentiary hearing at which time all interested parties can present their case to the Court on a full record.[7]

46.     Indeed, it is only through discovery that the value (if any) of the claims at issue in the settlement may be uncovered, as well as any evidence regarding the Trustee's investigation and analysis of such claims before entering the Settlement Agreement.

47.     Discovery into the Settlement Agreement also is necessary to allow the Managers to investigate whether they will make an offer to the Trustee for the causes of action against Kenneth that the Trustee is abandoning.  If those claims have the value that the Managers expect, then they may be able to takeover or acquire the causes of action from the Trustee in a manner that benefits creditors more than whatever slim value the Settlement Agreement appears to provide back to the estate from giving away such claims.

## CONCLUSION

For the foregoing reasons, the Managers respectfully object to the Settlement Motion, and request that the Court permit discovery and set this matter for an evidentiary hearing.


Dated: January 4, 2018                    **ROBERT ALLISON and JEFFREY CARR**

By their counsel:

*/s/ Anthony Perkins, Esq.*
Anthony Perkins, Esq.
Adam R. Prescott, Esq.
BERNSTEIN SHUR SAWYER & NELSON, P.A.
100 Middle St., P.O. Box 9729
Portland, ME 04101
Phone: (207) 774-1200
Fax: (207) 774-1127
Email: aperkins@bernsteinshur.com
          aprescott@bernsteinshur.com

---

[7]  Given the insufficiency of facts presented in the Settlement Motion, the Managers reserve their right to present additional arguments based on evidence presented at the evidentiary hearing.

## <u>CERTIFICATE OF SERVICE</u>

I, Anthony Perkins, being over the age of eighteen and an attorney at Bernstein Shur Sawyer & Nelson, P.A., hereby certify that on January 4, 2018, I filed the *OBJECTION BY ROBERT ALLISON AND JEFFERY CARR TO THE TRUSTEE'S MOTION TO APPROVE SETTLEMENT AGREEMENT, ABANDON CERTAIN CLAIMS, AND REMAND ADVERSARY PROCEEDING TO STATE COURT, AND REQUEST FOR DISCOVERY AND AN EVIDENTIARY HEARING* via the Court's CM/ECF electronic filing system, which sent notice to all parties that receive notification through the Court's CM/ECF System.

Dated: January 4, 2018                    */s/ Anthony Perkins*_____
                                         Anthony Perkins, Esq.